IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| AMARJIT S. BHATIA,<br><br>               Plaintiff,<br><br>v.<br><br>7-ELEVEN SOUTHLAND, CORP.,<br><br>               Defendant. | MEMORANDUM<br>DECISION AND ORDER<br><br>Case No. 2:08-CV-987 CW<br><br>District Judge Clark Waddoups |

In this action, Plaintiff Amarjit Bhatia has brought suit against Defendant 7-Eleven, Inc. ("7-Eleven") alleging that 7-Eleven terminated his employment in retaliation for pursuing an EEOC Complaint. Mr. Bhatia brings his retaliation claims under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act. This matter is before the court on 7-Eleven's Motion for Summary Judgment. Dkt. No. 16. For the reasons discussed below, the court DENIES Defendant's motion.

## BACKGROUND

Mr. Bhatia was employed by 7-Eleven almost continuously from 1987 until his termination in November 2003. Mr. Bhatia sustained a work-related injury in August 2000 which required him to take a leave of absence from his position at 7-Eleven. In December 2000, Market Manager Russell Nielson terminated Mr. Bhatia even though Mr. Bhatia provided evidence that he was still under a doctor's care.[1] A few weeks later, 7-Eleven's upper management learned of the termination and directed Mr. Nielson to reinstate Mr. Bhatia.

---

[1] Mr. Nielson terminated "Plaintiff's employment in December 2000 for not returning to work at the expiration of his leave. As soon as Plaintiff contacted [upper management] about his

In June 2001, Mr. Bhatia filed a charge against 7-Eleven in relation to this incident with the Equal Employment Opportunity Commission and the Utah Antidiscrimination and Labor Commission, alleging discrimination on the bases of race, national origin, disability, and retaliation. Mr. Bhatia filed a civil action in the U.S. District Court for the District of Utah in September 2001 under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, and the Americans with Disabilities Act, 42 U.S.C. § 12112. In February 2002, while the suit was pending in the District Court, Mr. Bhatia returned to work at 7-Eleven. The District Court granted summary judgment in favor of 7-Eleven in July 2003.[2] Mr. Bhatia filed a Notice of Appeal with the U.S. Court of Appeals for the Tenth Circuit in August 2003. Mr. Bhatia and 7-Eleven participated in the Tenth Circuit's mediation program from September 2003 to October 2003, when discussions were voluntarily discontinued and Mr. Bhatia withdrew the appeal.

In July 2003, Mr. Bhatia was transferred to a different 7-Eleven store under manager Kevin White, who was unaware of Mr. Bhatia's prior suit. This store suffered from frequent incidents of customers driving away without paying for gasoline, referred to as "drive-offs." In relation to these incidents, employees were instructed to obtain identifying information about the car if possible; however, established 7-Eleven policy prohibited employees from pursuing drive-

---

termination, they reinstated his employment and corrected the record so that Plaintiff did not have a gap in service as a result of his termination." Order Granting Def.'s Mot. for Sum. Jdgmt., 2 (Case No. 2:01-cv-715 (D. Utah July 14, 2003)).

[2] With respect to the December 2000 termination, the court stated: "Plaintiff concedes that when he called 7-Eleven, they reinstated his employment and corrected [their] records to remove any gap in service as a result of the termination. As such, the Court finds the termination did not result in an adverse employment action." Order Granting Def.'s Mot. for Sum. Jdgmt., 6 (Case No. 2:01-cv-715 (D. Utah July 14, 2003)). Although the termination was not deemed retaliation due to the corrective actions that 7-Eleven took, this does not negate the fact that Mr. Nielson had inappropriately terminated Mr. Bhatia.

offs.[3] Mr. Bhatia acknowledges that he was informed of this policy during his training for 7-Eleven.

7-Eleven's proffered reason for Mr. Bhatia's termination concerns an incident that occurred on November 2, 2003. Mr. Bhatia was working at a cash register during the afternoon shift when he became aware of a drive-off in progress. Mr. Bhatia alleges that he went to the door of the store in an attempt to obtain the vehicle's license plate number. As he was standing at the door of the store, Mr. Bhatia alleges that he decided to leave the store in order to check competitors' gas prices. Mr. Bhatia alleges that he often checked gas prices as part of his regular duties as assistant manager. Mr. Bhatia reentered the store approximately ten minutes later.

The following day, Mr. Bhatia's store manager, Kevin White, began an investigation into this incident. Mr. White viewed the surveillance tape from November 2, 2003 and took statements from two employees who had been on duty when the incident occurred. From this investigation, Mr. White concluded that Mr. Bhatia had chased the drive-off, in violation of 7-Eleven policy. Mr. White believed that Mr. Bhatia should be fired for the alleged violation and he consequently contacted his Field Manager, Kameron Stringham to inform him of the incident. White Dep. 32:13-34 (Dkt. No. 17, Ex. 3). 7-Eleven Management held a meeting with Mr. Bhatia on November 6, 2003. Present at this meeting were Mr. Stringham, Mr. Neilson (who had terminated Mr. Bhatia inappropriately in December 2000), and Human Resources Generalist Patricia Weatherman. During this meeting, Mr. Bhatia alleges that he denied chasing the drive-off. 7-Eleven terminated Mr. Bhatia's employment on November 7, 2003.

---

[3] Specifically, the 7-Eleven Operation Alert Booklet section on gasoline drive-offs instructs employees to get a description of the car, if possible. It goes on to state "Don't leave the store. As always, your personal safety should come first. Don't try to physically stop the person or chase after him or her." 7-Eleven Operation Alert, at 19 (Dkt. No. 17, Ex. 12).

In December 2003 and again in March 2004, Mr. Bhatia spoke with Mr. Nielson about obtaining one of the new 7-Eleven franchises that was opening in Utah. In response, Mr. Nielson stated, "You have sued 7-Eleven. We can't negotiate with you anything . . . . We can't give you anything. . . . We are not going to let you in." Bhatia Dep. 30:1-11 (Dkt. No. 18, Ex. 2). Mr. Nielson then further said "We are going to teach you a lesson." *Id.* at 93:3-4. It is unclear from the record whether Mr. Neilson made these statements in both the December 2003 and the March 2004 conversations or only in one of them.

Mr. Bhatia alleges that several factors indicate that he was terminated in retaliation for his previous suit against 7-Eleven. First, Mr. Bhatia was terminated within a few weeks of ending negotiations with 7-Eleven. Mr. Bhatia also points to the lack of progressive discipline concerning the drive-off incident as indicative of discriminatory animus. Mr. Bhatia claims that other employees committed comparable violations of company policy without being disciplined. Furthermore, Mr. Bhatia alleges that Mr. Neilson's discriminatory comments to him after his termination demonstrate a retaliatory motive on the part of 7-Eleven.

## ANALYSIS

**I.     LEGAL STANDARD**

The court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of a fact is determined by the substantive law governing the issue. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The moving party bears the initial burden of showing that there is

an absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). At this stage, the judge is not to make credibility determinations or to weigh the evidence. *Anderson*, 477 U.S. at 255. Summary judgment should only be granted if no reasonable trier of fact could find in favor of the non-moving party, even after viewing all reasonable inferences in its favor. *Id.* at 249.

## II. RETALIATION CLAIM – *MCDONNELL DOUGLAS* STANDARD

Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990 prohibit employers from discriminating against employees who engage in protected activity by opposing practices made unlawful under those statutes. 42 U.S.C. § 2000e-3(a); 42 U.S.C. § 12203(a). A plaintiff may attempt to prove retaliation through either direct or circumstantial evidence. *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 549-50 (10th Cir. 1999). The court finds no direct evidence of retaliation in this case.[4] Where the plaintiff lacks direct evidence of discrimination, the court analyzes the sufficiency of circumstantial evidence using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004).

Under the *McDonnell Douglas* analysis, the plaintiff has the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802. If the plaintiff succeeds, the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for the employment action. *Id.* at 802-04. If the employer sufficiently establishes this reason, the plaintiff then has

---

[4] "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (quotations and citation omitted). The comment allegedly made by Mr. Neilson does not constitute direct evidence. The court would have to infer that the alleged comment demonstrated a retaliatory mindset on the part of 7-Eleven management that also influenced the prior termination decision.

the burden to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.* at 804-05.

**A. Plaintiff's Prima Facie Case**

In order to establish a prima facie case of retaliation, the plaintiff must demonstrate "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (other citation omitted)).

In the present case, Mr. Bhatia engaged in protected activity by filing his previous suit under Title VII and the ADA and subsequently participating in the Tenth Circuit's mediation program. *See* 42 U.S.C. § 2000e-3(a) (stating that an employee has engaged in protected activity if he has "opposed any practice made an unlawful practice by this subchapter . . . or participated in any manner in an investigation, proceeding, or hearing under this subchapter"); *see also Kelley v. City of Albuquerque*, 542 F.3d 802, 813-14 (10th Cir. 2008) (holding that participation in an EEOC mediation is a protected activity under Title VII). Mr. Bhatia suffered an adverse employment action when he was terminated by 7-Eleven. *See Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007); *Argo*, 452 F.3d at 1202.

To establish the third prong, a "causal connection" between a protected action and a subsequent adverse action can be shown through "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Proctor*, 502 F.3d at 1208 (quotations and citation omitted); *compare Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171-72 (10th Cir. 2006) (holding that causation was

established when the adverse action occurred six weeks after the employer knew that the employee planned to engage in protected activity), *with Piercy v. Maketa,* 480 F.3d 1192, 1198 (10th Cir. 2007) ("[I]f the only evidence of causation is a temporal relationship, then the adverse action must occur closely following the protected activity. For example, an adverse employment action that happened more than three months after the protected activity was not entitled to a presumption of causation."). In the present case, Mr. Bhatia was terminated from his position approximately two weeks after withdrawing from mediation with 7-Eleven.[5] Accordingly, the court finds that the plaintiff has met the burden of establishing a prima facie case.

### B. Defendant's Proffered Reason for Termination

7-Eleven now has the burden to articulate a legitimate, nondiscriminatory reason for the adverse action. This is an "exceedingly light burden." *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1165-66 (10th Cir. 2007) (quotations and citation omitted). The employer is only required to explain "its actions against [the plaintiff] in terms that are not facially prohibited by Title VII [or the ADA]." *Stover*, 382 F.3d at 1073 (quotations and citation omitted). In the present case, 7-Eleven's stated reason for terminating Mr. Bhatia is that it believed he violated company policy by pursuing a gasoline drive-off. This explanation is substantiated with evidence from the investigation conducted by Mr. White, as well as the affidavits of Mr. White, Mr. Stringham, Mr. Neilson, and Ms. Weatherman. 7-Eleven has thus met its burden of proffering a nondiscriminatory reason for termination.

---

[5] The time at which an EEOC complaint is filed is typically used in determining whether temporal proximity is sufficient to establish a causal connection. *See Proctor*, 502 F.3d at 1208-09; *Argo*, 452 F.3d at 1202. Besides filing the complaint, however, Mr. Bhatia participated in ongoing mediation at the appellate level. This also constitutes participation in a proceeding under Title VII and the ADA. Common sense dictates that a causal connection may be established when an adverse employment action occurs shortly after an employee withdraws from the mediation process with his employer. The mediation would have the effect of forestalling any adverse action until the negotiations were completed; thus, the temporal analysis should start at the conclusion of the mediation.

## C. Pretext

Mr. Bhatia must now come forward to demonstrate "that there is a genuine dispute of material fact as to whether [7-Eleven's] explanations for terminating [his] employment are pretextual." *Metzler*, 464 F.3d at 1172 (citation omitted). When analyzing the plaintiff's arguments for pretext, the court considers "whether the employer's stated reasons were held in good faith at the time of the discharge, even if they later prove to be untrue, or whether plaintiff can show that the employer's explanation was so weak, implausible, inconsistent or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination." *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006). In demonstrating pretext, Mr. Bhatia may not rely solely on the temporal proximity of the protected activity to the adverse action, but must introduce additional evidence of retaliatory motive. *See Metzler*, 464 F.3d at 1172 (stating that temporal proximity is a factor in establishing pretext, but is alone insufficient to survive summary judgment).

### i. Good Faith Belief

Mr. Bhatia's first assertion of pretext relates to the factual dispute concerning the gas drive-off incident. Here Mr. Bhatia misstates the issue; the disputed nature of Mr. Bhatia's conduct is not material to the inquiry of pretext, but rather whether 7-Eleven had a good-faith belief that Mr. Bhatia had violated company policy. *See Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000) ("[T]he pertinent question in determining pretext is not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine.") (quotations and citation omitted)). In viewing all reasonable inferences in favor of the plaintiff by assuming that Mr. Bhatia did in fact leave the store to check competitor's gas prices, the issue the court must determine is whether 7-Eleven genuinely believed that Mr. Bhatia left

8

the store to chase a gas drive-off customer.  In this matter, the court is not "to act as a 'super personnel department' that second guesses employers' business judgments."  *Argo*, 452 F.3d at 1203 (quotations and citation omitted).

Subsequent to the drive-off incident, Mr. Bhatia's store manager, Mr. White, conducted an investigation into Mr. Bhatia's conduct.  Mr. White, who was unaware of the plaintiff's prior protected activity, concluded that Mr. Bhatia had chased the drive-off after viewing the video surveillance tape of the store at the time of the incident and taking statements from two employees who were also in the store at the time of the incident.  Mr. White also took into consideration the fact that Mr. Bhatia had previously been disciplined for leaving the store to pursue a shoplifter when he had worked under a different manager.

Based upon the opinion and investigation of Mr. White, it is reasonable to assume that other members of 7-Eleven management could similarly conclude that Mr. Bhatia had violated company policy.  Mr. Bhatia's managers were also entitled to choose to disbelieve his proffered explanation that he had left the store to check gas prices during his afternoon shift, especially in light of Mr. Bhatia's own admission that gas prices were entered into the computer each morning by nine o'clock.  Other than his denials to the contrary, Mr. Bhatia has produced no evidence that rebuts 7-Eleven's good-faith belief that Mr. Bhatia had pursued a drive-off.

        ii.    *Progressive Discipline*

Mr. Bhatia's argument that he was not afforded progressive discipline is similarly unpersuasive as demonstrative of pretext.  7-Eleven has stated that it considers the pursuit of a gas drive-off to be a serious violation of company policy that may merit termination.  Mr. Bhatia can point to no written company policy that mandates progressive discipline for such an offense. While written company policy may not have mandated that Mr. Bhatia be terminated for such an

offense, 7-Eleven had the discretion to make such a decision. *See Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007) (finding no evidence of pretext where the employee was not afforded progressive discipline prior to termination as the use of progressive discipline was at the employer's discretion).

Mr. Bhatia's argument concerning progressive discipline is further undermined by the multiple documents 7-Eleven submitted detailing a history of written warnings and complaints concerning Mr. Bhatia's job performance. Def.'s Mem. in Supp. (Dkt. No. 17, Ex. 2, 7, 10, and 11). One written warning, dated October 15, 2003, is marked as a 'final warning' and states that further misconduct may be grounds for demotion or termination. Def.'s Memo. in Supp. (Dkt. No. 17, Ex. 9). All of these warnings and complaints took place in September and October of 2003, in the two months preceding Mr. Bhatia's termination. Mr. Bhatia's argument that greater leniency should have been shown to a long-term, manager-level employee is similarly unpersuasive. 7-Eleven stated that Mr. Bhatia's alleged misconduct was particularly inappropriate for an assistant store manager, especially in light of his previous performance issues. The court finds that Mr. Bhatia has not demonstrated that 7-Eleven's decision to immediately terminate him after the drive-off incident, rather than affording him progressive discipline, is evidence of pretext.

      iii.    *Disparate Treatment*

Finally, Mr. Bhatia attempts to prove pretext by alleging disparate treatment. Mr. Bhatia claims that other 7-Eleven employees committed similar violations of company policy without being subjected to disciplinary measures. To demonstrate pretext through differential treatment, a Title VII plaintiff must show that the employees violated work rules of comparable seriousness and were under the same manager as the plaintiff. *Swackhammer v. Sprint/United Mgmt. Co.*,

493 F.3d 1160, 1171 n. 11 (10th Cir. 2007). Mr. Bhatia must establish not only that differential treatment occurred, but must also rule out nondiscriminatory reasons for the differential treatment. *See id.* at 1171; *Timmerman*, 483 F.3d at 1121.

To satisfy this burden, Mr. Bhatia points to two instances of alleged employee misconduct that he contends show evidence of differential treatment. Mr. Bhatia has not demonstrated that 7-Eleven management was aware of either of these alleged violations. *See Timmerman*, 483 F.3d at 1121 (declining to find evidence of disparate treatment where the employer was unaware of another employee's misconduct). Mr. Bhatia has also admitted that he is unaware of what, if any, discipline these employees received for the alleged violations. Accordingly, the court does not find any evidence of disparate treatment sufficient to cast doubt upon the legitimacy of 7-Eleven's proffered reason.

At this point in the proceedings, Mr. Bhatia has not produced evidence that shows 7-Eleven's proffered reason for termination is implausible, inconsistent, or unworthy of belief. Mr. Bhatia has failed to meet his burden of showing pretext because he has not demonstrated that 7-Eleven did not, in fact, rely on a genuine belief that he violated company policy in deciding to terminate his employment.

## III.    RETALIATION – MIXED-MOTIVE STANDARD

Although 7-Eleven has successfully shown a non-discriminatory motive for Mr. Bhatia's termination, this does not end the court's analysis. Title VII states that an employer also commits an unlawful employment practice when a prohibited discriminatory motive "was a motivating factor for any employment practice, even though other factors also motivated the practice."[6] 42 U.S.C. § 2000e-2(m). In other words, if a discriminatory motive also was a factor

---

[6] The large majority of circuits have concluded that ADA's causation standard also follows the motivating factor" standard. *Pinkerton v. Spellings*, 529 F.3d 513, 518 (5th Cir.

11

in 7-Eleven's decision to terminate Mr. Bhatia, then 7-Eleven may be liable despite it having successfully shown a non-discriminatory reason for terminating Mr. Bhatia. Under this "mixed-motive" theory, the plaintiff must show that retaliatory animus actually played a role in the decision; it had to be a "motivating part" of the particular employment decision. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989) (plurality opinion), *superseded in part by* 42 U.S.C. §§ 2000e-2(m), 2000e-5(g)(2)(B).

To meet this burden, the plaintiff need not produce "direct" evidence of discrimination "in its sense as [the] antonym of 'circumstantial.'" *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1226 (10th Cir. 2008) (citing *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 181 (2d Cir. 1992)). The Supreme Court has stated that a plaintiff may proceed under a mixed-motive theory with circumstantial evidence, as long as it is sufficient to meet the burdens of production and persuasion. *Desert Palace Inc. v. Costa*, 539 U.S. 90, 98-101 (2003). Although the plaintiff may use circumstantial evidence to establish discriminatory animus, this evidence "must be tied 'directly' to the retaliatory motive." *Fye*, 516 F.3d at 1226 (citing *Thomas v. Denny's, Inc*., 111 F.3d 1506, 1512 (10th Cir.1997) ("A plaintiff will be entitled to the burden-shifting analysis set out in *Price Waterhouse* upon presenting evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged [retaliatory] attitude." (alteration in original) (quotations omitted)).

Mr. Bhatia alleges that Mr. Neilson made a comment to him shortly after his termination that demonstrates a retaliatory motive for his termination. Specifically, Mr. Bhatia alleges that Mr. Neilson told him, "You have sued 7-Eleven. We are going to teach you a lesson," when Mr.

---

2008) (stating that seven circuits have determined "the ADA causation standard does not require a showing of sole cause"). The Tenth Circuit has not expressly stated whether it also adopts this standard. The court concludes that the reasoning for the "motivating factor" standard is persuasive and applies it here.

Bhatia called Mr. Neilson to inquire into receiving a franchise. Bhatia Dep. 93:3-4 (Dkt. No. 18, Ex. 1). Mr. Neilson had previously terminated Mr. Bhatia on inappropriate grounds, he knew of Mr. Bhatia's prior protected activity, and he played a role in the ultimate decision to terminate Mr. Bhatia in 2003.

Furthermore, 7-Eleven has not denied that Mr. Neilson made these comments to Mr. Bhatia. Rather, 7-Eleven argues in its briefing that these alleged comments were made in relation to a separate business deal after Mr. Bhatia's termination, and as such should not be used as evidence of discrimination in the earlier decision to terminate. The comments, however, could be demonstrative of a retaliatory mindset that also existed at the time of termination. If Mr. Bhatia's assertion about these comments is ultimately deemed credible, a trier of fact may infer that this retaliatory mindset played a role in that adverse employment action. If Mr. Bhatia is able to prove by a preponderance of the evidence that actual discrimination was a motivating factor in his termination, he would be entitled to a mixed-motive instruction.

Once a plaintiff proves that retaliatory animus was a motivating factor, the burden shifts to the employer to prove that it would have made the same decision in the absence of the prohibited discrimination. *Price Waterhouse*, 490 U.S. at 250, 252; *Medlock*, 164 F.3d at 550. If the employer meets this burden, it may assert an affirmative defense that limits the amount and types of recovery available to the plaintiff.[7]

---

[7] The relevant statutory language states the following regarding this affirmative defense:

> On a claim in which an individual proves a violation under section [2000e-2(m)] of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court--
> (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section [2000e-2(m)] of this title; and

While Mr. Bhatia has failed to show that 7-Eleven's nondiscriminatory reason is pretextual, the court finds that Mr. Bhatia has raised a genuine issue as to whether retaliatory animus was a motivating factor in 7-Eleven's decision to terminate his employment. It therefore denies summary judgment on this ground.

## CONCLUSION

For the reasons stated above, the court hereby DENIES Defendant's motion for summary judgment.[8] Mr. Bhatia may only assert, however, a claim based on mixed-motive, as discussed in Section III above.

SO ORDERED this 26th day of September, 2011.

BY THE COURT:

_____
Judge Clark Waddoups
United States District Judge

---

(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

42 U.S.C. § 2000e-5(g)(2)(B).

[8] Docket No. 16.